# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

William J. Moore,
    Petitioner

vs.                                        Case No. 1:08cv360
                                            (Dlott, C.J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1), respondent's "Answer/Return Of Writ" with exhibits (Doc. 8), and petitioner's "traverse" in reply to the return of writ (Doc. 9).

### Procedural Background

On March 12, 2004, the Butler County, Ohio, grand jury returned an indictment in Case No. CR04-01-0047, charging petitioner with two counts of possession of cocaine "[o]n or about the 2nd day of January, 2004" in violation of Ohio Rev. Code § 2925.11(A). (Doc. 8, Ex. 1).[1]

---

[1] The first count charged a first-degree felony offense; the second count charged a second-degree felony offense. (Doc. 8, Ex. 1).

A few months later, on July 21, 2004, the Butler County grand jury returned a second indictment in Case No. CR04-07-1180, charging petitioner with one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(1); possession of cocaine in violation of Ohio Rev. Code § 2925.11(A) with specification; possession of marijuana in violation of Ohio Rev. Code § 2925.11(A); and aggravated possession of drugs (Oxycodone) in violation of Ohio Rev. Code § 2925.11(A). (*Id.,* Ex. 2).[2] According to the indictment, these offenses took place "[o]n or about the 1st day of July, 2004." (*Id.*).

It appears from the record that the trial court joined the two cases for trial at the request of the prosecuting attorney. (*See id.,* Ex. 5, p. 2). Following a trial before a jury, petitioner was found guilty as charged in Case No. CR04-01-0047; in Case No. CR04-07-1180, he was found guilty of two offenses–possession of cocaine with specification and aggravated possession of drugs. (*See id.,* Ex. 13, pp. 1-2).[3]

Thereafter, petitioner filed a *pro se* motion for new trial, which was denied on August 4, 2005. (*See id.,* Exs. 8-10). The matter proceeded to sentencing, and on August 11, 2005, petitioner was sentenced to an aggregate prison term of fifteen (15) years. Specifically, petitioner was sentenced in Case No. CR04-01-0047 to concurrent prison terms of eight (8) years on the first possession count and four (4) years on the second count; in Case No CR04-07-1180, he was sentenced to a seven (7) year prison term on the cocaine possession count, which was to be served concurrently with an eleven-month sentence for the aggravated possession offense, but consecutively to the sentence imposed in Case No. CR04-01-0047. (*Id.,* Exs. 11-12).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, Twelfth Appellate District, raising three assignments of error including the claim that "the trial court erred in imposing a sentence above the minimum term" in violation of *Blakely v. Washington,* 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005). (*Id.,* Ex. 13). On September 5, 2006, the Ohio Court of Appeals affirmed petitioner's convictions, but sustained the assignment of error

---

[2] In the indictment, petitioner was charged with a second-degree felony cocaine possession offense, and a fifth-degree felony aggravated possession of drugs offense. (Doc. 8, Ex. 2, Counts 2 and 4).

[3] Apparently, in Case No. CR04-07-1180, the jury acquitted petitioner of trafficking in cocaine, and the trial court dismissed the marijuana possession count. (Doc. 8, Ex. 13, pp. 1-2).

challenging his sentence; finding that petitioner had been sentenced "under statutes now deemed unconstitutional" under the Ohio Supreme Court's decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), the appellate court remanded the matter "for resentencing consistent with *Foster*." (*See id.*, Ex. 15).[4]

On January 12, 2007, a resentencing hearing was held in the Butler County Common Pleas Court in accordance with the court of appeals' remand order. (*See id.*, Exs. 19-20). In separate Entries filed on January 31 and February 23, 2007, petitioner was resentenced to the same terms of imprisonment totaling fifteen (15) years that were originally imposed. (*Id.*).

With the assistance of counsel, petitioner filed a timely appeal from the resentencing decision to the Ohio Court of Appeals, Twelfth Appellate District. Counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), finding "nothing exists in the record as a legitimate and meritorious ground for appeal" and requesting "that the Court make an independent review of the entire record to determine whether or not there is prejudicial error supporting Appellant's appeal." (*Id.*, Ex. 23, p. 7). In the brief, counsel directed the court's attention to four possible issues, including "[w]hether trial court's resentencing violated the ex post facto, due process, double jeopardy and separation of power clauses of the Ohio and United States Constitutions." (*Id.*). On June 11, 2007, the Ohio Court of Appeals dismissed the appeal "for the reason that it is wholly frivolous." (*Id.*, Ex. 24).

Petitioner did not attempt to appeal the Ohio Court of Appeals' June 11, 2007 decision to the Ohio Supreme Court. Instead, on July 16, 2007, petitioner filed a *pro se* application to reopen the appeal pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, Twelfth Appellate District, claiming that his appellate counsel was ineffective in failing to advise him when serving him with a copy of the *Anders* brief "of the time limit in which to file a pro se brief." (*Id.*, Ex. 25).

---

[4] It appears that petitioner did not pursue an appeal to the Ohio Supreme Court from the Court of Appeals' September 5, 2006 decision on direct review. On December 7, 2006, petitioner filed a *pro se* application to reopen the appeal, claiming that his appellate counsel was ineffective for failing to assert two additional assignments of error on appeal. (Doc. 8, Ex. 16). On February 6, 2007, the Ohio Court of Appeals denied the application because it was untimely and petitioner had "failed to show good cause" for his delay in filing. (*Id.*, Ex. 17). Respondent states that petitioner did not appeal this decision to the Ohio Supreme Court. (*Id.*, Brief, p. 7).

On August 14, 2007, the Ohio Court of Appeals denied the reopening application, finding no merit to petitioner's ineffective assistance of appellate counsel claim. (*Id.*, Ex. 27). The court reasoned in pertinent part:

> The court waited a reasonable period–74 days after counsel mailed a copy of the no-error brief to appellant–for a pro se filing before submitting the case on June 4, 2007. During this time, and despite the fact he had received a copy of counsel's brief, appellant filed no pleadings or made any effort to contact the court. In the absence of a direct mandate from either the United States or Ohio Supreme Courts that counsel notify a client of a time frame for filing a pro se brief, this court declines to impose such a duty upon counsel when filing a no-error brief.

(*Id.*, p. 3). Petitioner apparently did not appeal this decision to the Ohio Supreme Court. (*See id.*, Brief, p. 8).

Approximately five months later, on February 19, 2008, petitioner filed a *pro se* complaint with the Ohio Supreme Court requesting habeas corpus relief; petitioner claimed in this pleading that he was being "illegally restrain[ed] of his liberty after the expiration of his maximum sentence." (*Id.*, Ex. 21). On April 9, 2008, the Ohio Supreme Court *sua sponte* dimissed the complaint without opinion. (*Id.*, Brief, p. 9 & Ex. 22).

Petitioner next filed the instant federal habeas corpus petition in May 2008. (*See* Doc. 1). In the petition, petitioner alleges four grounds for relief challenging the January 31 and February 23, 2007 resentencing decisions. (*See* Doc. 1, pp. 6-10). In Grounds One and Four, he essentially claims that his continued confinement in prison violates due process because under state law, the trial court had authority only to impose the shortest prison sentence of three (3) years, which is now expired. (*Id.*, pp. 6, 10). In Grounds Two and Three, petitioner alleges that his resentencing under *Foster* violated his rights under the Constitution's Ex Post Facto and Double Jeopardy Clauses. (*Id.*, pp. 7, 9).

In the return of writ, respondent contends that petitioner has waived his claims for relief, and alternatively argues that the petition should be denied because petitioner's claims lack merit. (Doc. 8). Petitioner challenges respondent's "waiver"

argument in his "traverse" brief. (Doc. 9, pp. 2-7). The undersigned will assume, without deciding, that petitioner has not waived his claims for relief and will proceed to address the claims on the merits.

## OPINION

### Petitioner Is Not Entitled To Relief Based On Any Of His Claims Challenging His ReSentencing Or Continued Confinement Based On *Blakely* And *Foster*

In the four grounds for relief alleged in the petition, petitioner essentially claims that (1) his sentence to more than a three-year minimum term based on "sentencing enhancers" not charged in the indictment violated his Sixth Amendment rights in light of the Supreme Court's *Blakely* and *Booker* decisions; and (2) his resentencing pursuant to the remedy adopted by the Ohio Supreme Court in *Foster* to cure the constitutional infirmity violates the Constitution's Ex Post Facto, Double Jeopardy and Due Process Clauses. (Doc. 1; *see also* Doc. 9).

In this case, the indictment in Case No. CR04-01-0047 was returned in March 2004 before *Blakely* was decided; the indictment in Case No. CR04-07-1180 was returned in July 2004, approximately one month after *Blakely* was decided. (*See* Doc. 8, Exs. 1, 2). Petitioner was sentenced in the two cases in August 2005 after *Booker* was decided in January 2005, but prior to *Foster*. (*See id.,* Ex. 11–12).

In *Blakely,* the Supreme Court reversed a state prisoner's sentence after finding that the trial judge had improperly enhanced the sentence beyond the statutory maximum based upon facts neither admitted to by the defendant nor found by the jury. *Blakely,* 542 U.S. at 303. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* Importantly, the *Blakely* Court clarified that "the 'statutory maximum' ... is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*

In *Booker,* the Supreme Court extended the reasoning of *Blakely* to the federal sentencing guidelines; the Court held that the Sixth Amendment as construed in *Blakely* applied to the guidelines and thus any fact (other than a prior conviction) that

5

increases a federal criminal defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244.

Under Ohio's sentencing statutes in effect at the time petitioner was initially sentenced, the court was required to impose "the shortest term authorized for the offense," unless: (1) "[t]he offender was serving a prison term at the time of the offense, or the offender previously had served a prison term[;]" or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Ohio Rev. Code § 2929.14(B). Moreover, the maximum prison term could be imposed "only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders ..., and upon certain repeat violent offenders." Ohio Rev. Code § 2929.14(C).

Petitioner's appeal was pending before the Ohio Court of Appeals when *Foster* was decided on February 27, 2006. In *Foster*, the state supreme court ruled that, despite the fact that "[m]ost Ohio appellate courts have determined that *Blakely* is inapplicable" to Ohio's sentencing statutes, portions of the statutes had been "eviserated by *Blakely*." *Foster*, 845 N.E.2d at 487-88. The *Foster* court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 490-94.

Turning next to the question of what the appropriate remedy should be to bring about compliance with *Blakely*, the *Foster* court adopted the approach taken in *Booker* of severing from Ohio's sentencing statute the *Blakely*-offending portions of that statute and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See id.* at 494-98. Because the Ohio Supreme Court held in *Foster* that its decision extended to cases then pending in the Ohio courts on direct review, *see id.* at 499, the Ohio Court of Appeals applied the *Foster* decision in the instant case both in remanding the matter for re-sentencing and in upholding the application of the *Booker* severance

6

remedy, which allowed the trial court on resentencing full discretion to impose a sentence within the range established by state statute.

In challenging his sentence in the instant case, petitioner contends that the trial court only had authority to impose a presumptive minimum sentence based on the law in effect at the time of his indictments and initial sentencing. In so contending, he essentially asks the Court to apply *Foster* in holding that the sentences imposed by the court amounted to a violation of *Blakely* and *Booker,* while at the same time arguing against *Foster*'s application to the extent the state supreme court adopted the severance remedy utilized in *Booker*. As one Ohio appellate court pointed out in rejecting the same argument raised in an analogous case, petitioner "essentially seeks the benefit of a state of law that never existed; he wants 'a sentence that comports with the Sixth Amendment requirements of *Booker* [and *Foster*], but wants to avoid the possibility of a higher sentence under the remedial holdings of *Booker* [and *Foster*].'" *State v. Paynter,* No. CT2006-0034, 2006 WL 3020319, at *5 (Ohio Ct. App. 5 Dist. Oct. 13, 2006) (unpublished) (quoting *United States v. Jamison,* 416 F.3d 538, 539 (7th Cir. 2005) (which joined other circuits in rejecting "an *ex post facto* claim based on the remedial holding in *Booker*" that was brought by a defendant challenging his federal sentence)).

In Grounds One and Four, petitioner essentially posits that the sentencing court only possessed subject matter jurisdiction to impose minimum concurrent sentences, because the indictment failed to allege the additional essential elements required to be found by a jury beyond a reasonable doubt before any sentence in excess of the minimum term could be imposed. This claim lacks merit.

As an initial matter, petitioner is unable to prevail on any claim that the imposition of consecutive sentences in Case Nos. CR04-01-0047 and CR04-07-1180 violated his Sixth Amendment rights in light of *Blakely* and *Foster*. The Supreme Court recently held in *Oregon v. Ice,* 129 S.Ct. 711 (2009), that consecutive sentencing decisions do not trigger Sixth Amendment *Blakely* concerns, and therefore, "'the Sixth Amendment does not exclude' a state's practice of requiring a judge to find certain facts before ... sentenc[ing] a defendant to consecutive, rather than concurrent, terms of imprisonment." *Evans v. Hudson,* 575 F.3d 560, 566 (6th Cir. 2009) (quoting *Ice,*

7

129 S.Ct. at 714-15.[5]

In any event, no court (including the Supreme Court in *Blakely* and its progeny) has ever held that the indictment must include not only the essential elements of the substantive criminal offenses charged against a defendant, but also any additional factual findings necessary for the imposition of a non-presumptive sentence falling within the permissible statutory range, which ultimately may or may not be determined post-conviction at sentencing after a pre-sentence investigation. Indeed, to remedy the constitutional infirmities found in Ohio's sentencing statutes, the *Foster* court adopted the approach used by the Supreme Court in *Booker* with respect to the federal sentencing guidelines, of severing the four *Blakely*-offending portions of Ohio's sentencing statutes and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See Foster*, 845 N.E.2d at 494-98. By excising the provisions that rendered Ohio's sentencing scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker*, 542 U.S. at 233, "encounters no Sixth Amendment shoal" and thus certainly no jurisdictional hurdle.

In Ground Two, petitioner alleges that the retroactive application of the *Foster* remedy to correct the constitutional infirmities in Ohio's sentencing statutes constitutes a violation of the Constitution's Ex Post Facto and Due Process Clauses. This issue already has been thoroughly discussed and rejected by this Court and other federal district and state courts in Ohio. *See, e.g., Hooks v. Sheets,* No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, C.J.; Hogan, M.J.) (unpublished) (and cases cited therein); *see also Wright v. Warden, Pickaway Corr. Inst.,* __ F.Supp.2d __, No. 1:07cv1022, 2009 WL 1850170, at *1, *23-25 (S.D. Ohio June 25, 2009) (Barrett, J.; Hogan, M.J.) (to be published) (and cases cited and quoted therein); *Smith v. Brunsman,* 626 F.Supp.2d 786, 788, 792-95 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.) (noting that "both the federal district courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Kelley v. Brunsman,* 625 F.Supp.2d 586, 594-95, 606-08 (S.D. Ohio 2009) (Spiegel, S.J.; Hogan, M.J.);

---

[5] In *Evans*, 575 F.3d at 565-67, the Sixth Circuit reversed the district court's grant of a conditional writ of habeas corpus because the Supreme Court's decision in *Ice* effectively foreclosed the petitioner's ineffective assistance of appellate counsel claim.

8

*Rettig v. Jefferys*, 557 F.Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch*, No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman*, No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.: Perelman, M.J.) (unpublished); *Mason v. Brunsman*, No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe*, No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper*, No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson*, No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman*, No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe*, No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein).[6]

The same reasoning contained in these decisions uniformly rejecting *ex post facto* challenges to *Foster* applies to the case-at-hand. *Foster* did not change the elements of the offenses that petitioner was convicted of committing, and petitioner faced the same penalty ranges in sentences for those offenses both before *Foster* (when he committed the offenses, was indicted and was initially sentenced) and after *Foster*. *Cf. McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished). As a district court recently reasoned in an analogous case where the petitioner similarly argued that only the minimum sentence could be imposed based on the pre-*Foster* law in effect when he committed the charged offenses:

> The Supreme Court has never held ... that the retroactive application of a court's statutory construction which results in the loss of a presumption

---

[6]*Cf. Turner v. Warden, Noble Corr. Inst.*, No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely*, his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

of a minimum sentence is either violative of the *Ex Post Facto* Clause or due process. In the instant matter, such was the effect of *Blakely* and *Foster* upon O.R.C. § 2929.14. The plain fact is that the holdings of those cases did not alter the elements necessary to convict Petitioner, nor the potential penalties Petitioner faced for his conduct. *Blakely* and *Foster* simply altered the procedure by which a sentencing court determined the appropriate sentence. Thus, Petitioner's assertion that "it is the date of the defendant's *alleged conduct* that dictates the sentencing law that applies to a defendant," is inapposite.... That principle applies only where a change in the law that determines the potential penalties for a crime imposes a more onerous penalty at the time of sentencing than it would have at the time the crime was committed. *See Miller v. Florida*, 482 U.S. 423, 430-32 ... (1987); *see also Dobbert v. Florida*, 432 U.S. 282, 293-294 ... (1977) (finding no *ex post facto* violation where the "new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime.").

....Neither *Blakely* nor *Foster* had any effect on the range of penalties for each of [the charged] crimes, and Petitioner had fair warning as to the punishment that might result from his conduct.... [W]hen Petitioner was sentenced, he faced exactly the same potential penalties....

*Smith v. Welch, supra,* 2009 WL 2167863, at *2-3 (emphasis in original).

Finally, in Ground Three, petitioner contends that his resentencing under *Foster* violated his rights under the Constitution's Double Jeopardy Clause because "he was effectively placed in jeopardy twice for the same offense after having been 'implicitly' acquitted of the same offense for lack of proof at initial sentencing hearing." (Doc. 1, p. 9). The undersigned rejects petitioner's contention that he was implicitly acquitted of any sentencing factor that was found by the trial court in initially sentencing petitioner to more than the minimum prison term under provisions of Ohio's sentencing statutes later declared in *Foster* to be *Blakely*-offending. Courts have uniformly rejected double jeopardy claims raised by federal defendants challenging their resentencing under *Booker* to correct a *Blakely* violation in the original sentence. *See, e.g., United States v. Vaughn*, 430 F.3d 518, 525 n.3 (2nd Cir. 2005) (noting that because the "retroactive application of the *Booker* remedial opinion to cases pending on direct

review does not violate the *ex post facto* principle of the Due Process Clause, we find no merit in appellants' claim that the Double Jeopardy Clause compels resentencing solely in accordance with facts found by the jury"); *United States v. Harrison*, 237 Fed.Appx. 911, 913 (5th Cir. June 21, 2007) (not published in Federal Reporter) (holding that in challenging his sentence under *Blakely/Booker,* the defendant had "opened the dooor for the district court to revisit the entire sentence," and that "[t]he constitutional protection against double jeopardy 'prohibits resentencing only when a defendant has developed a legitimate expectation of finality in his original sentence'") (quoting *United States v. Benbrook,* 119 F.3d 338, 340 (5th Cir. 1997)).[7]

In *Sattazahn v. Pennsylvania,* 537 U.S. 101, 107-09 (2003), the Supreme Court reaffirmed prior precedents recognizing that double jeopardy protections are not triggered in sentencing proceedings absent a finding by the court or jury amounting to an "acquittal" regarding the lack of proof beyond a reasonable doubt of a fact necessary for enhancement of a sentence. Here, no such finding was made. Indeed, the court found that an enhanced sentence was appropriate. Therefore, no violation of the Double Jeopardy Clause occurred when petitioner was resentenced under *Foster* to the same sentence that was initially imposed. *Cf. Berry v. Fabian,* Civ. No. 08-4859 ADM/JJK, 2009 WL 1687796, at *3-4 (D. Minn. June 27, 2009) (unpublished) (holding that the retrospective use of a sentencing jury to consider aggravating factors in resentencing a defendant on remand, after her original aggravated sentence was found to have violated *Blakely*, was not the equivalent of a second prosecution in violation of the Double Jeopardy Clause).[8]

Accordingly, in sum, the undersigned concludes that petitioner's claims challenging the reimposition of non-minimum consecutive sentences on resentencing under *Foster* to correct a *Blakely* violation lack merit. Petitioner, therefore, is not entitled to habeas relief based on any of his grounds for relief alleged in the instant

---

[7]*Cf. United States v. Johnson,* 444 F.3d 1026, 1030 (9th Cir. 2006) (noting that "principles of double jeopardy" did not preclude the district court on resentencing to correct a *Blakely* error from considering certain factual allegations, including conduct underlying an acquitted charge).

[8]In *Berry, supra,* 2009 WL 1687796, at *4, the federal habeas court suggested that double jeopardy might preclude consideration of aggravating factors on resentencing "if the state in the first trial had not sought an aggravated sentence" or "if the state had presented insufficient evidence to support the ... [finding] of ... aggravated factors in the first trial." Neither of those exceptions apply in the instant case.

constitutional right" or that the issues presented herein are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *cf. Smith v. Welch, supra,* 2009 WL 2167863, at *4.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon any showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 9/9/09
cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2009 habeas orders\08-360denypet.wsiv-exh-OhSCt.merits-foster-expostfacto-DJ.wpd

12

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

William J. Moore,
    Petitioner

vs                                   Case No. 1:08cv360
                                        (Dlott, C.J.; Hogan, M.J.)

Warden, Lebanon Correctional
Institution,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

William J. Moore 505-034
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                        ☒ Agent
                                         ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7002 3150 0000 8388 4216

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1:08cv360    (Doc. 10)